# United States District Court

|  SOUTHERN  | DISTRICT OF | NEW YORK |
|---|---|---|

MICHELLE A. SAGALYN,

Plaintiff,

**SUMMONS IN A CIVIL CASE**

V.

COTTAGES & GARDENS PUBLICATIONS, LLC
and RICHARD EKSTRACT, Jointly and Severally,

Defendants.

CASE NUMBER:

**08 CV 5233**

JUDGE LYNCH

TO: (Name and address of defendant)

COTTAGES & GARDENS PUBLICATIONS, LLC and RICHARD EKSTRACT, 535 Fifth
Avenue, New York, N.Y. 10028

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

William C. Rand, Esq., Law Office of William Coudert Rand, 711 Third Avenue, Suite
1505, New York, N.Y. 10017

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

J. MICHAEL McMAHON

CLERK

Catherine Lapsley

(BY) DEPUTY CLERK

JUN 0 6 2008

DATE



JUDGE LYNCH

08 CV 5233

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
711 Third Ave., Suite 1505
New York, New York 10017
(Phone) (212) 286-1425; (Fax)(212) 599-7909
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
MICHELLE A. SAGALYN,                              :
                                                  :     2008 Civ. _____
          Plaintiff,                     :
                                                  :     **COMPLAINT**
       -against-                            :
                                                  :
COTTAGES & GARDENS PUBLICATIONS, LLC and          :
RICHARD EKSTRACT,                                 :
                                                  :
          Defendants.                    :
------------------------------------------------------------------------X

RECEIVED
JUN 0 6 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Michelle A. Sagalyn ("Plaintiff"), by her attorneys, The Law Office of William

Coudert Rand, as and for her complaint against Defendants alleges as follows:

### NATURE OF ACTION, PARTIES, AND JURISDICTION

1.     Plaintiff, Michelle Sagalyn, a citizen of the State of Connecticut residing in

Southport, Connecticut, was subjected to sexual harassment by her supervisor, and was then

unlawfully terminated in retaliation for refusing to engage in a sexual relationship with her

supervisor, and in retaliation for her complaining about discrimination against her. She worked

both in the New York City and Connecticut offices of Defendant COTTAGES & GARDENS

PUBLICATIONS, LLC.

2.     Upon information and belief, defendant COTTAGES & GARDENS

PUBLICATIONS, LLC ("C&G") is a limited liability company authorized to do business in the

State of New York, with headquarters located at 535 Fifth Avenue, New York, N.Y. 10028.

C&G has had at all relevant times more than 15 employees.

3. Upon information and belief, defendant RICHARD EKSTRACT ("EKSTRACT"), was and is the Chief Executive Officer of C&G, and was at all relevant times Plaintiff's direct supervisor.

4. Plaintiff was unlawfully terminated from her employment in retaliation for refusing to engage in a sexual relationship with Defendant Ekstract, as well as, in retaliation for her complaining about sexual discrimination in violation of Federal, New York State, Connecticut State and New York City anti-discrimination laws.

5. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 29, 2008, complaining of the acts of discrimination alleged herein.

6. On April 30, the EEOC issued a notice informing plaintiff of her right to sue defendants in federal court. A copy of the notice is attached hereto as Exhibit A. This action has been commenced within 90 days of receipt of this notice. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII.

7. This action seeks damages for Defendants' violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), New York City Administrative Code § 8-502(a), *et. seq.,* and New York Executive Law § 296, *et. seq,* and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA").

8. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 29 U.S.C. § 626(c), and 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over the claims of plaintiff brought under the Human Rights Law and the Administrative Code and The New York State and Connecticut State labor law , pursuant to 28 U.S.C. § 1367.

2

9.      Venue is properly laid in the Southern District of New York under U.S.C. §
1391(b), in that this is the District where the Defendants reside and in which the majority of the
unlawful practices occurred.

## JURY DEMAND

10.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to
Fed. R. Civ. P. 38(b).

## PROCEDURAL REQUIREMENTS

11.     Prior to the commencement of this action, on June 6, 2008,  Plaintiff served a
copy of this Complaint upon the New York City Commission on Human Rights and the
Corporation Counsel of the City of New York on in accordance with New York City
Administrative Code Section 8-107 (1)(a) and (16).

## FACTS

12.     On February 26, 2006, Plaintiff Michelle Sagalyn, started working for Defendants
as Publisher of Connecticut Cottages & Gardens magazine at the annual salary of $150,000 per
year.  Her principle job was to drive the advertising revenue in the Connecticut Cottages &
Gardens magazine.

13.     On October 2006, as a result of Michelle's successful performance, Richard
Ekstract, the President and Owner of Defendant Cottages & Gardens Publications, LLC
("Defendant" or "Company"), and owner of Connecticut Cottages & Gardens magazine, agreed
to pay for 50% of her car lease.

14.     On December 2006, based on Michelle's continued successful performance,
Michelle was given a $20,000 salary raise from an annual salary of $150,000 to $170,000 (13%
increase) and an additional $10,000 cash bonus.

3

15. On May 8, 2007, Less than 5 months since her last raise, Michelle met with Richard Ekstract in his office, and he gave her another salary increase of $15,000 from $170,000 to $185,000. At this time, he also agreed to give her a special one-time bonus for achieving particular performance objectives relating to the June 2007 issue of Connecticut Cottages & Gardens magazine. At this time he also promised Michelle that she would be making over $200,000 at the end of the year with additional bonuses if Michelle finished the year with a 15% revenue increase in advertising sales over the year 2006.

## SEXUAL HARASSMENT

16. When Michelle thanked Richard Ekstract for these raises and commitments, Richard Ekstract sexually propositioned her. The conversation, as Michelle specifically recalls it went as follows:

- Ekstract: You could be my mistress.
- I replied: I only go out with men that are divorced.
- Ekstract: I think that's a little harsh. I could fix you up in an apartment.
- I responded: I already have an apartment in New York.
- At this point Eileen [Richard Ekstract's wife, who works for the magazines] came into the office.
- Ekstract: I just gave Michelle a raise and was telling her that by the end of this year she will be making well over 200k.

17. Michelle found this sexual proposition to be extremely offensive and immediately complained about it to many persons inside and outside of the Company. This conversation was relayed to her direct reports Amy Tambini and KC Williams in Connecticut, as well as DJ Carey, the Editor in Chief. It was further communicated to Ira Ellenthal, who had worked for Cottages and Gardens LLC for a number of months in 2007, as well as to numerous friends (Liz Flavin, Adele and Rick Higgins, Newell Carapezzi, among others.) and to her sister. Attached hereto as Exhibit B is the email Michelle sent to her sister referencing the sexual proposition.

4

18.     This sexual advance was communicated to David Sloan, Group Publisher Consultant on December 11, 2007 when Michelle picked him up at the Greenwich train station on their way to a business event. David's response was: "He's an old man, don't let that bother you. Focus on sales."

19.     After this overt sexual request, and her rejection of same, Ekstract's behavior towards her and his job performance expectations applicable to her changed dramatically, as indicated below.

20.     On May – December 2007, following this incident of sexual harassment, Ekstract discriminated against her by creating an increasingly hostile work environment for me. He unjustly criticized and rebuked her in front of other employees – and in particular her direct reports - and took steps to frustrate and impede her ability to perform her job responsibilities. He set unrealistic expectations and required her to perform functions out of the normal scope of her job's responsibility.

21.     For example, in June 2007 after the sexual advance, Richard Ekstract reallocated her key sales representative, Amy Tambini, from the Connecticut to the New York office, so she could focus on driving sales to the Hamptons publication. This greatly undermined the Connecticut sales initiative with a dramatic ripple effect. When Michelle pointed this out in numerous weekly reports and in many conversations with Ekstract, her concerns were dismissed. As Michelle had anticipated, when the Connecticut magazine saw a flattening of sales as a result of losing her key sales person, Michelle was held personally responsible even though this management reallocation was not of her doing.

22.     Richard's personal attacks and public abuse of her increasingly escalated:

23.    On or around June 5, 2007, as the August sales campaign geared up, Michelle was publicly berated and humiliated in the weekly sales staff meeting for the August editorial line-up, an area which completely falls outside of her jurisdiction.

24.    Several weeks later in a subsequent sales meeting, upon closing the August issue with less than Ekstract's unrealistic advertising sales target, Michelle was again publically attacked for being an "*incompetent woman*" that "*still didn't get it*". Again this was witnessed by the entire sales staff.

25.    On August 21, 2007, at the sales meeting Michelle was publicly berated for her proposed September Publisher letter: "*you are a useless woman and don't know how to write. I never want to see you do this again*".

26.    Many critical administrative functions that Michelle brought to Ekstract's attention were intentionally ignored, further creating additional hardship in the performance of her job.

27.    Ekstract held her personally responsible for the accounts payable and arrearages even though Michelle was a publisher and was not in charge of collections or delinquent accounts. (The company's structure was organized in a manner that had the accounting function reporting directly to Ekstract.) Furthermore, when Michelle asked for accounts payable reports they were repeatedly denied to her – often times by Ekstract screaming and yelling and by threatening her job stating "*You fucking bitch, if you don't get these arrears under control, I'll fire you*" - making her "collections" task impossible. On numerous occasions such bouts were overheard and subsequently commented upon by other staff members, such as Michelle O'Connor, a sales representative at the time.

6

28. Ekstract failed to respond to her numerous requests to renew the office lease which was expiring in September 2007 under a prior sublease arrangement.

29. Ekstract refused to permit the purchase of a receptionist desk for the Connecticut office, and instead demanded an endless negotiation over price, attempting to save a mere $250.

30. Ekstract purposely refused to pay the Company's Connecticut Office's Pitney Bowes invoices causing Pitney Bowes to call her in October 2007 to inform her that the postage meter would be shut off unless the delinquent bill dating back to August was paid in full.

31. Ekstract refused to pay the Company's Connecticut Office's United Parcel Service invoices causing United Parcel Service to suspend the Company's Connecticut account in September 2007 for non-payment dating back to June 2007. This situation applied only to the Connecticut office.

32. Ekstract actively sought to discredit her authority through gossip and by revealing personal information, such as her single parent status (about which Ekstract had repeatedly questioned her from the beginning of her employment), with her direct reports. This hindered her authority and ability to motivate her staff and keep them focused. Also, by screaming and hurling insults at her in public, he further discredited her management effectiveness.

33. An important advertising client, Christopher Peacock, asked for counter cards to showcase their magazine advertisement to their shoppers. (Counter cards are frame-like display cards with a copy of the customer's magazine advertisement which the advertizer typically displays at its retail establishment.) Ekstract denied the request as he did not want to pay the supplying company for monies ($500 +/-) owed from 2005. (These low-cost counter cards are used as ways to reinforce an advertisers' commitment to the magazine while promoting the same

to the advertisers' clients.) Her inability to properly service her business as a result of Ekstract's interference, was a great deterrent in her ability to grow the business.

34.     Although the magazine had commenced doing business in the State of Connecticut on September 15, 2005, it had not registered to do business in the State. In order to get electrical services (through Connecticut Power & Light) , a Connecticut resident staff employee had to secure the electricity in his name. When this employee left the Company in September 2007, Ekstract was faced with having to register the business officially. Michelle made numerous attempts to bring this to Ekstract's attention in order to assure uninterrupted electrical service. During this period of time, her reminders were ignored until Ekstract finally registered the Company in Connecticut on October 25, 2007. Once again, Ekstract's delay in cooperating with the administrative issues and functionality of the office was designed to divert her attention away from selling advertising and to harm her ad sales performance.

35.     On December 19, 2007, Michelle was wrongfully terminated. The reason given was "performance". As the sales numbers below will clearly show, performance was clearly not the cause of her termination. Rather Michelle was terminated because Michelle refused Richard Ekstract's sexual advance and because he desired a "younger fresher" employee in her position as he so stated in the termination conversation:

36.     Under her almost 24 month leadership, advertising revenue for Connecticut Cottages & Gardens magazine increased 36% from 2.2 mm to 3.0 mm annually.

37.     Most specifically, despite the hostile and abusive work environment, Michelle finished 2007 with a 15% revenue increase over 2006, thereby attaining the goal that we had established. This achievement was even more significant and commendable given the circumstances under which they were attained

8

38.     It is clear that performance was a mask for the real issue of not becoming Ekstract's mistress. Throughout her dismissal, which was performed on the telephone, the abuse and humiliation continued:

39.     Another reason given for her dismissal as stated by Ekstract was "I don't see you anymore."

40.     It is clear and undeniable that Michelle performed her responsibilities as Publisher with integrity and a high degree of competency. Contrary to the "performance reason" given for her dismissal, it is clear that upon her rejection of Ekstract's sexual advances towards her, he embarked on a retaliatory campaign to humiliate, abuse, and otherwise discredit her.

41.     Her results and performance are real and undeniable. Michelle was very well liked by the Connecticut Cottages & Gardens magazine advertiser community. This was clearly in evidence as the magazine's single largest account, Klaff's, threatened to pull its advertising from the magazine specifically because of her dismissal. (As a result of Klaff's objection to her termination, an emergency lunch was arranged in Connecticut with Ekstract, the editor in chief, DJ Carey, and the new publisher and the CEO of Klaff's to attempt to convince Klaff's to continue as a client). Other accounts who have voiced their dismay include but are not limited to: The Higgins Group, Wadia, Ring's End, Jack Franzen Architect, and others.

42.     During the course of job searching, on or about January 30, 2008, Michelle met with Adam Japco, Senior Vice President of Network Communications Inc, and President of their Home & Design Area.  Adam told Michelle that he had met Ekstract in May of 2007, as NCI was interested in acquiring the Cottages & Gardens publications. At the time of Ekstract's meeting with Japco, Ekstract was "praising [Michelle's] abilities and performance". Shortly after the breakfast meeting between Ekstract and Japco, Ekstract propositioned Michelle.

9

43.     Thus, her termination was the direct result of sexual discrimination and in retaliation for her complaining about the sexual discrimination.

## FIRST CAUSE OF ACTION
### Title VII

44.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

45.     By the acts and practices described above, including but not limited to, subjecting Plaintiff to sexual harassment and creating a hostile work environment, Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex and in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII").

46.     As a result, Plaintiff is now suffering and will continue to suffer irreparable physical and mental injuries and monetary damages and damages for physical and mental anguish and humiliation because of the discriminatory conduct of the Defendant.

47.     Defendants' discriminatory conduct towards Plaintiff constitutes a malicious, willful and reckless violation of Plaintiff's rights under Title VII.

## SECOND CAUSE OF ACTION
### New York State Human Rights Law

48.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

49.     By the acts and practices described above, including but not limited to, subjecting Plaintiff to sexual harassment and creating a hostile work environment, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of New York Executive Law § 296, *et. seq.*

50.     As a result, Plaintiff is now suffering and will continue to suffer irreparable physical and mental injuries and monetary damages and damages for physical and mental anguish and humiliation because of the discriminatory conduct of the Defendant.

51.     Defendants' discriminatory conduct towards Plaintiff constitutes a malicious, willful and reckless violation of Plaintiff's rights under New York Executive Law § 296, *et. seq.*

## THIRD CAUSE OF ACTION
### New York City Administrative Code

52.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

53.     By the acts and practices described above, including but not limited to, subjecting Plaintiff to sexual harassment and creating a hostile work environment, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of New York City Administrative Code § 8-502(a), *et. seq.*

54.     As a result, Plaintiff is now suffering and will continue to suffer irreparable physical and mental injuries and monetary damages and damages for physical and mental anguish and humiliation because of the discriminatory conduct of the Defendant.

55.     Defendants' discriminatory conduct towards Plaintiff constitutes a malicious, willful and reckless violation of Plaintiff's rights under New York City Administrative Code § 8-502(a), *et. seq*

11

## FOURTH CAUSE OF ACTION
(Retaliation in Violation of 42 U.S.C.A.
s. 2000e and Conn. State Law and New York State law
and New York City Law)

56.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

57.     Plaintiff complained about Defendants' discrimination, and Defendants retaliated against Plaintiff.

58.     As a proximate result of Defendants' retaliation against plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

59.     As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

60.     Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

61.     The conduct of defendants was outrageous; was done in a deliberate, callous, malicious, fraudulent and oppressive manner intended to injure plaintiff; was done with an improper and evil motive, amounting to malice and spite; and was done in conscious disregard of plaintiff's rights. Plaintiff is therefore also entitled to an award of punitive damages.

62.     As a result of the foregoing, plaintiff has been denied employment; has lost wages, benefits, promotional opportunities, and bonuses; has suffered mental anguish, emotional distress and loss of enjoyment of life; and has incurred damages thereby.

12

## FIFTH CAUSE OF ACTION
### (HOSTILE WORK ENVIRONMENT IN VIOLATION OF NEW YORK CITY LAW, ADMINISTRATIVE CODE § 8-107 AND NEW YORK AND CONNECTICUT STATE LAW)

63.     Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

64.     Defendants had knowledge of and acquiesced in the harassment set forth above.

65.     The conduct and words of the Defendants upon which Plaintiff's claim is predicated was unwelcome.

66.     The Defendants' conduct was promoted simply because of Plaintiff's sexual orientation.

67.     The Defendants' conduct created a hostile work environment which affected the terms, condition and privileges of Plaintiff's employment.

68.     Plaintiff's employment with Defendants was terminated because she was a woman.

69.     Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

70.     Defendants have violated the New York City Human Rights law, (New York City Law, Administrative Code § 8-107) and New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and as a result Plaintiff has suffered damages.

71.     As a result of the foregoing, Plaintiff has been denied employment; has lost wages, benefits, promotional opportunities, and bonuses; has suffered mental and physical anguish, emotional and physical distress and loss of enjoyment of life; and has incurred damages thereby.

13

## SIXTH CAUSE OF ACTION
(Negligent Supervision and. Retention of Unfit Employees)

72.    Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

73.    Defendant C&G knew of the improper and discriminatory behavior of its employees that created a hostile work environment for Plaintiff and resulted in Plaintiff's illegal termination, and took no steps to prevent or cure this illegal behavior.

74.    Defendant C&G had knowledge or imputed knowledge of the improper and discriminatory behavior of Defendant C&G's employees that constituted an undue risk of harm to Plaintiff.

75.    Defendants failed to supervise and monitor C&G's employees and intentionally retained unfit employees who illegal and discriminatory conduct harmed Plaintiff.

76.    As a proximate result of Defendant C&G' breach of their duty to supervise, Plaintiff was injured and incurred damages.

## SEVENTH CAUSE OF ACTION
(Aiding and Abetting Discrimination)

77.    Plaintiff repeats and realleges the preceding paragraphs as though fully set forth herein.

78.    Defendants are liable for damages resulting from Defendants' aiding and abetting the acts of discrimination and retaliation performed against Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(i)    On each Cause of Action, actual damages to be determined at trial, but in no event less than $500,000.00 for, inter alia, loss of wages,

14

benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits, to be determined at trial;

(ii)    An award of damages in an amount {not less than $500,000 to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

(iii)    An award of punitive damages;

(iv)    An order enjoining defendant from engaging in the future in the wrongful practices alleged herein;

(v)    Disbursements and other costs;

(vi)    Attorneys' fees; and

(vii)    For such other and further relief which the Court deems just and proper.

Dated:    New York, New York
        June 6, 2008

LAW OFFICE OF WILLIAM COUDERT RAND

By:    _____
       William C. Rand, Esq.

711 Third Ave., Suite 1505
New York, New York 10036
(212) 286-1425
Attorneys for Plaintiff

15

# EXHIBIT A

## TO COMPLAINT

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | **Michelle Sagalyn**<br>**73 Dave'S Lane**<br>**Southport, CT 06890** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2008-02427** | Patrick A. Sanford,<br>**Federal Investigator** | **(212) 336-3677** |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**APR 3 0 2008**

Enclosures(s)

Spencer H. Lewis, Jr.,
Director

*(Date Mailed)*

cc: | **Respondent:**<br>**COTTAGES & GARDENS, LLC**<br>**Director of Human Resources**<br>**535 Fifth Avenue**<br>**New York, NY 10028** | **Respondent's Attorney:**<br>Littler & Mendelson, LLP<br>Attn: Deke W. Bond, Esq.<br>885 Third Ave, 16th Floor<br>New York, NY 10022-4834 | **Charging Party's Attorney:**<br>William C. Rand<br>711 Third Avenue<br>Suite 1505<br>New York, NY 10017 |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

Spencer H. Lewis, Jr.
District Director

# Certification of Early Notice of Right to Sue

Michelle Sagalyn
73 Dave's Lane
Southport, CT 06890

**RE:** *Michelle Sagalyn v. Cottages & Gardens, LLC*
*EEOC Charge No. 520-2008-02427*

Dear Ms. Sagalyn:

The U. S. Equal Employment Opportunity Commission ("EEOC" or "Commission") is in receipt of your request for a *Notice of Right to Sue* regarding the above referenced Charge of Discrimination ("Charge").

Ordinarily a Charging Party is not entitled to receive a *Notice of Right to Sue* upon request until the Charge has been pending with the EEOC for at least 180 days. However, an early *Notice of Right to Sue* is authorized by 29 C.F.R. § 1601.28(a)(2) if the Director determines that it is probable that the Commission will be unable to complete its administrative process within 180 days of when the Charge was filed.

The Commission has reviewed the information/documents contained in the file. Based on the Commission's current workload and the extent of investigation required to complete this investigation, we conclude that the Commission will be unable to complete this investigation within the next 180 days. Therefore, in accordance with the Commission's Priority Charge Processing Procedures, the EEOC has determined that it is appropriate to issue a *Notice of Right to Sue* to you at this time.

No further investigation or action will be taken by the Commission in regards to this Charge. Enclosed is your *Notice of Right to Sue*. If you wish to pursue this Charge on your own, you may file a lawsuit in Federal District Court using the *Notice of Right to Sue*, within **90 days** of your receipt of it.

Sincerely,

Spencer H. Lewis, Jr.
District Director

**APR 3 0 2008**

Date

CC: Respondent & Charging Party's Attorney

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before 7/1/02** – *not* 12/1/02 – in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EXHIBIT B

TO COMPLAINT

## Unknown

**From:** Michelle Sagalyn [michelle@ctcandg.com]
**Sent:** Friday, May 11 2007 - 12:05pm
**To:** adine.sagalyn [adine.sagalyn@free.fr]
**Subject:**

Adinee-poo:

How are you?

Just checking in. Everything here is pretty much fine.

Here's some news:

Earlier in the week I received my second raise and bonus in five months. That's the good news.

The bad new is that my boss, and owner of the magazine, propositioned me at that time, asking me to be his mistress and offering me an apartment in New York!!!! I told him I already had a place in New York and that no thank you I wasn't interested in his proposal. You would think that in this day and age these types of things wouldn't be going on, but they do! I hope this won't effect my job.....

When and where are you going on vacation?

I'll call you tomorrow.

xox

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**Michelle A. Sagalyn**
**Publisher**
**Connecticut Cottages & Gardens**
**19 Ludlow Road, Suite 302**
**Westport, CT 06880**
**(203) 227-1400 /voice**
**(203) 226-2824 /fax**
**michelle@ctcandg.com/em**
**www.ctcandg.com**
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~